IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| AIMEE MADDONNA, | ) Civil Action Number: 6:19-cv-00448-TMC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HEALTH & HUMAN SERVICES; | ) |
| ALEX M. AZAR, II, in his official | ) |
| capacity as Secretary of the | ) |
| United States Department of Health | ) |
| and Human Services; | ) |
| Administration For Children and Families | ) |
| Department of Health and Human Services; | ) |
| STEVEN WAGNER, in his official | ) |
| capacity as Principal Deputy Assistant | ) |
| Secretary for the Administration for | ) |
| Children and Families, | ) |
| | ) |
| Defendants. | ) |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

NATURE OF THE CASE ..... 1

STATEMENT OF THE FACTS ..... 3

I. Statutory and Regulatory Background ..... 3

II. HHS Grants South Carolina's Exception Request. ..... 4

III. Plaintiff and Her Alleged Injuries ..... 7

IV. Plaintiff's Claims Against the Federal Defendants and the Relief Sought ..... 7

ARGUMENT ..... 8

I. Plaintiff Lacks Standing to Sue the Federal Defendants. ..... 9

A. Plaintiff Lacks Standing to Sue the Federal Defendants on the Basis of Miracle Hill's Alleged Actions. ..... 9

B. Whether She is Asserting It or Not, Plaintiff Lacks Taxpayer Standing. ..... 15

II. The Court Lacks Jurisdiction to Consider Plaintiff's APA Claims Because HHS's Enforcement Decision is Committed to Agency Discretion By Law. ..... 18

III. Plaintiff Fails to State Constitutional Claims. ..... 22

A. Plaintiff Fails to State a Claim Against the Federal Government Based on Miracle Hill's Actions. ..... 22

B. Plaintiff Fails to State a Claim Against the Federal Government Based on South Carolina's Licensing and Funding Decisions. ..... 25

C. Plaintiff Fails to State a Claim Based on the January 23 Conditional Exception. ..... 27

CONCLUSION ..... 33

**TABLE OF AUTHORITIES**

**CASES**

*Allen v. Wright*,
468 U.S. 737 (1984) ..... 11, 30

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ..... 23

*Angelex Ltd. v. United States*,
723 F.3d 500 (4th Cir. 2013) ..... 18

*Ansley v. Warren*,
861 F.3d 512 (4th Cir. 2017) ..... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 5, 28

*Bennett v. Spear*,
520 U.S. 154 (1997) ..... 12

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ..... 22, 23, 24, 26

*Bowen v. Kendrick*,
487 U.S. 589 (1988) ..... 16, 29

*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*,
483 U.S. 327 (1987) ..... 29

*Cty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) ..... 31

*Doe v. Obama*,
631 F.3d 157 (4th Cir. 2011) ..... 10, 11, 12, 13

*Doe v. Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) ..... 10

*Flast v. Cohen*,
392 U.S. 83 (1968) ..... 16

*Frank Krasner Enters., Ltd. v. Montgomery Cty.*,
401 F.3d 230 (4th Cir. 2005) ..... 10, 11, 14

*Freilich v. Upper Chesapeake Health, Inc.*,
313 F.3d 205 (4th Cir. 2002) ..... 18, 32

*Frothingham v. Mellon*,
262 U.S. 447 (1923)........................................................................................ 16

*Hawkins v. Freeman*,
195 F.3d 732 (4th Cir. 1999) .................................................................... 31, 32

*Heckler v. Chaney*,
470 U.S. 821 (1985).......................................................................... 18, 19, 21

*Hein v. Freedom From Religion Found., Inc.*,
551 U.S. 587 (2007).......................................................................... 16, 17, 18

*ICC v. Brotherhood of Locomotive Eng'rs*,
482 U.S. 270 (1987).......................................................................... 19, 21, 22

*Jackson v. Metro. Edison Co.*,
419 U.S. 345 (1974)........................................................................................ 25

*Lambeth v. Bd. of Comm'rs of Davidson Cty., NC*,
407 F.3d 266 (4th Cir. 2005) ............................................................ 27, 28, 30

*Lemon v. Kurtzman*,
403 U.S. 602 (1971).................................................................................. 27, 30

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................. 9, 10, 16

*Marks v. United States*,
430 U.S. 188 (1977)........................................................................................ 16

*Massachusetts v. Mellon*,
262 U.S. 447 (1923)........................................................................................ 16

*McCreary Cty., Ky. v. ACLU of Ky.*,
545 U.S. 844 (2005).................................................................................. 27, 28

*Milburn v. Anne Arundel Cty. Dep't of Social Servs.*,
871 F.2d 474 (4th Cir. 1989) ............................................................ 23, 24, 25

*Mirant Potomac River, LLC v. EPA*,
577 F.3d 223 (4th Cir. 2009) .................................................................... 10, 15

*Moss v. Spartanburg Cty. Sch. Dist.,7*,
683 F.3d 599 (4th Cir. 2012) ............................................................................ 27

*Mueller v. Allen*,
463 U.S. 388 (1983)........................................................................................ 30

*Phillips v. LCI Int'l, Inc.*,
190 F.3d 609 (4th Cir. 1999) .......................................................................... 5

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982)........................................................................................ 25

*Rochin v. California*,
342 U.S. 165 (1952)........................................................................................ 31

*Ross v. Cecil Cty. Dep't of Soc. Servs.*,
878 F. Supp. 2d 606 (D. Md. 2012)................................................................ 33

*Sierra Club v. Larson*,
882 F.2d 128 (4th Cir. 1989) ..................................................................... 19, 20, 21

*Sierra Club v. U.S. Department of the Interior*,
899 F.3d 260 (4th Cir. 2018) .......................................................................... 12

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976).......................................................................................... 15

*Slaughter v. Mayor & City Council of*,
*Balt.*, 682 F.3d 317 (4th Cir. 2012)................................................................. 31

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)...................................................................................... 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)............................................................................................ 9

*United States v. Armstrong*,
517 U.S. 456 (1996)........................................................................................ 18

*United States v. Lanier*,
520 U.S. 259 (1997)........................................................................................ 32

*Warth v. Seldin*,
422 U.S. 490 (1975).......................................................................................... 9

*Wood v. Arnold*,
915 F.3d 308 (4th Cir. 2019) ..................................................................... 27, 28

**STATUTES**

5 U.S.C. § 701 .......... 18, 21

42 U.S.C. § 670 .......... 4

42 U.S.C. § 671 .......... 4

42 U.S.C. § 674 .......... 4

42 U.S.C. § 2000bb-1 .......... 6

**RULES**

Fed. R. Civ. P. 12(b)(1) .......... 3, 33

Fed. R. Civ. P. 12(b)(6) .......... 3, 25, 27, 33

**REGULATIONS**

45 C.F.R. § 75.102 .......... 4, 21

45 C.F.R. § 75.300 .......... *passim*

45 C.F.R. § 1356.60 .......... 4

## NATURE OF THE CASE

Plaintiff Aimee Maddonna's Complaint describes a "crisis" in the South Carolina foster care system, caused by a rapidly increasing number of children in need and a "relatively flat" number of foster-care-home placements over the last five years. Compl. ¶¶ 102, 103, 115. Plaintiff estimates a large, 1,500 home shortfall in foster homes in the State. *Id.* ¶¶ 103, 104. She also acknowledges that Miracle Hill Ministries, an entity that recruits and helps train prospective foster parents to help meet this large and growing need, is the "largest foster-care child-placement agency in South Carolina." *Id.* ¶ 3.

In response to a scenario that she deems dire, however, Plaintiff proposes a counterproductive solution: she asks this Court to force the Federal Defendants (or "HHS") to take action that would likely do nothing but *remove* a key service provider from the South Carolina foster care system—thus exacerbating the very shortfall in foster care homes that she decries. Plaintiff's Complaint alleges that Miracle Hill, which recruits foster parents and thus does the very work that is necessary to mitigate the shortfall in foster households, has a policy of working only with prospective foster parents who share Miracle Hill's religious beliefs. She asks the Court to force the Federal Defendants to take enforcement action against South Carolina if Miracle Hill will not change this policy, including by withdrawing federal funding from the State.

But given the allegations of the Complaint, it is pure speculation that forcing Federal Defendants to take such enforcement action would cause Miracle Hill to change its beliefs. It is just as likely, if not more so, that Miracle Hill would refuse and would instead cease providing services under South Carolina's foster care program. It is to no one's benefit, and certainly not children in need, for the "largest foster-care child-placement agency" in South Carolina to cease providing services to the State's foster care population. That outcome would not solve any

shortfall in foster home placements. To the contrary, it would only make the shortfall worse. And it would also have little tangible benefit to Plaintiff: by her own admission, there are other foster care agencies operating where Plaintiff lives *right now* that she could turn to for assistance in volunteering with foster children. Yet Plaintiff admits she has not sought to work with any of those other agencies.

Fortunately, the Court need not go down that road because Plaintiff's Complaint should not pass the starting line. Her claims against the Federal Defendants are riddled with jurisdictional and merits-related defects that warrant dismissal.

*First*, Plaintiff lacks standing to sue the Federal Defendants. She alleges injury in her capacity as a prospective volunteer with foster children based on Miracle Hill's alleged refusal to work with her as a volunteer. But that gives Plaintiff no basis to sue the Federal Defendants because it is *Miracle Hill*, not the Federal Government, that caused that alleged injury by applying its own independent criteria regarding the volunteers with which it will work. Miracle Hill is not a party to this litigation, and it is pure speculation to suppose that granting Plaintiff the relief she seeks against the Federal Government would actually lead Miracle Hill to begin working with Plaintiff. Plaintiff also alleges injury in her capacity as a federal taxpayer on the ground that Miracle Hill receives federal funds. Plaintiff appears to concede, however, that her status as a federal taxpayer does not give her standing to sue in this case. Even if she did claim taxpayer standing, it would not apply here because the Supreme Court has long rejected taxpayer standing as a basis for federal jurisdiction, and the narrow exception the Court has recognized for taxpayer standing in certain Establishment Clause cases does not apply here.

*Second*, the Court lacks jurisdiction to hear Plaintiff's claims under the Administrative Procedure Act ("APA") (Counts I and II). Plaintiff challenges HHS's conditional decision not to

enforce a portion of its grant regulations against South Carolina. That non-enforcement decision is a classic exercise of agency discretion that is presumptively precluded from APA review.

*Third*, Plaintiff's constitutional claims against the Federal Defendants (Counts III, IV, and V) fail to state a claim upon which relief can be granted. Plaintiff has not shown that the Federal Defendants may be held legally responsible for Miracle Hill's actions or for South Carolina's decision to license and fund Miracle Hill. As for the actual federal agency action alleged in the Complaint, Plaintiff cannot show that HHS's decision to provide South Carolina a conditional exception from a portion of one of its grant regulations violates the Constitution. That exception is not an establishment of religion (Count III), but is instead a neutral accommodation of religious freedom that furthers key secular goals, including ensuring a robust network of service providers in the South Carolina foster care system. It also does not violate equal protection (Count IV) or due process (Count V); HHS's decision to provide a conditional exception to South Carolina did not itself deny Plaintiff equal treatment, nor was it fatally arbitrary. Plaintiff's APA challenge to the constitutionality of HHS's decision (Count II) similarly fails to state a claim because it rests on these same meritless allegations of constitutional violations.

In sum, and for the reasons that follow, the Court should dismiss all claims against the Federal Defendants for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

## STATEMENT OF THE FACTS

### I. Statutory and Regulatory Background

Plaintiff's claims against the Federal Defendants concern HHS's award of grants to South Carolina under Title IV-E of the Social Security Act, which authorizes federal funding to states "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care" programs

for eligible children. 42 U.S.C. § 670. To be eligible for Title IV-E payments, a state must submit a foster care plan for HHS approval containing certain features. *Id.* § 671(a). States with a compliant plan receive Title IV-E funding for a portion of the state's foster care maintenance payments for each statutorily eligible child in foster care. *Id.* § 674(a)(1). A state may also receive reimbursement for administrative expenses necessary for the provision of child placement services and the proper and efficient administration of the Title IV-E state plan. *Id.* § 674(a)(3). These expenses may include activities such as training, case management, and recruitment and licensing of foster homes. 45 C.F.R. § 1356.60(c). States have discretion to engage third parties to provide many of these services. Title IV-E does not contemplate or express any preference regarding whether these third parties should or should not be faith-based.

Title IV-E prohibits states and their subgrantees from "deny[ing] to any person the opportunity to become an adoptive or a foster parent, on the basis of the race, color, or national origin of the person, or of the child involved." 42 U.S.C. § 671(a)(18)(A). The statute does not include a prohibition on denials based on religious beliefs. Instead, HHS has promulgated a regulation, rooted in an HHS "public policy requirement," that no person may be "denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on . . . religion." 45 C.F.R. § 75.300(c). An HHS regulation authorizes the agency to issue "[e]xceptions on a case-by-case basis" from this and other grant regulations where not otherwise required by law. *See* 45 C.F.R. § 75.102(b).

## II. HHS Grants South Carolina's Exception Request.

In response to a request from the State, HHS granted South Carolina an exception from

section 75.300(c)'s religious non-discrimination provision on January 23, 2019. Ex. A at 4.[1] South Carolina sought the exception in connection with its use of federal funds to reimburse faith-based organizations that provide services under the State's Title IV-E Foster Care Program ("the SC Foster Care Program").

One such faith-based organization, Miracle Hill Ministries, figured prominently in HHS's decision to grant the exception, as it does in Plaintiff's Complaint. Miracle Hill is a licensed child-placing agency in South Carolina that, among other things, recruits people to serve as foster parents in the SC Foster Care Program and assists them in obtaining foster-care licenses. Compl. ¶¶ 26, 27;[2] Ex. A at 1. In its request for an exception, South Carolina informed HHS that Miracle Hill exclusively recruits foster parents of a particular religion, a criterion that Miracle Hill applies on the basis of its sincere religious beliefs. Ex. A at 1–2. South Carolina also informed HHS that Miracle Hill is a prominent provider in South Carolina, recruiting up to 15% of the foster care families in the SC Foster Care Program. *Id.* Given Miracle Hill's substantial role in assisting with foster case placement in South Carolina, the State told HHS that it "would have difficulty continuing to place all children in need of foster care" if Miracle Hill were to forego licensure and funding. *Id.* at 2.

HHS granted South Carolina's requested exception as to "Miracle Hill or any other subgrantee in the SC Foster Care Program that uses similar religious criteria in selecting among

---

[1] The Court may consider the attached letter from HHS to Governor McMaster without converting this motion to one for summary judgment because the letter "was integral to and explicitly relied on in the complaint" and there can be no serious dispute as to its authenticity. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see, e.g.*, Compl. ¶ 93 (citing and characterizing the letter).

[2] As they must at this stage, the Federal Defendants assume the truth of the Complaint's factual allegations for purposes of this motion, but not those allegations pleaded in only conclusory fashion or that state legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009).

prospective foster care parents." Ex. A at 4. HHS's decision was based in part on its determination that the burden imposed on the free exercise rights of Miracle Hill and similarly situated religious entities by section 75.300(c)'s religious non-discrimination provision was not justifiable under the Religious Freedom Restoration Act ("RFRA"). RFRA provides that the Federal Government may not "substantially burden a person's exercise of religion" unless it demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000bb-1(a), (b). HHS concluded that section 75.300(c)'s religious non-discrimination provision imposed a substantial burden on Miracle Hill's exercise of religion and that refusing the State's requested exception would fail RFRA's test. Ex. A at 3. HHS also based its exception decision on its determination that enforcing section 75.300(c) in a manner that could result in Miracle Hill withdrawing from the SC Foster Care Program "would . . . cause a significant programmatic burden . . . by impeding the placement of children into foster care." Ex. A at 3.

HHS granted the exception contingent on South Carolina requiring Miracle Hill (and other subgrantees using the exception) "to refer potential foster parents that do not adhere to the subgrantee's religious beliefs to other subgrantees in the SC Foster Care Program," or to the State itself for service. *Id.* at 4. Through this condition, HHS ensured that not only would the exception accommodate Miracle Hill's religious beliefs, but that this accommodation would not operate to prevent prospective foster parents from having an opportunity to work with children in foster care under the SC Foster Care Program. Notably, Plaintiff alleges that two licensed, nongovernmental child-placing agencies in addition to Miracle Hill operate in Greenville County, where she resides. Compl. ¶ 28. Plaintiff says that she has declined to seek opportunities to work with foster children through those other agencies. *Id.* ¶ 48.

### III. Plaintiff and Her Alleged Injuries

Plaintiff Aimee Maddonna, a Greenville County resident, alleges that she contacted Miracle Hill in the hope of volunteering with children in foster care after she learned about the organization from one of its representatives through her homeschool parents' group. Compl. ¶¶ 25, 34. Miracle Hill ultimately declined to enter into a volunteer relationship with Plaintiff because of its religious conviction that it should work only with volunteers who share Miracle Hill's religious beliefs. *Id.* ¶¶ 38–40. Plaintiff alleges that she has standing based on this episode, averring that she "suffered harms as alleged in this Complaint because Miracle Hill . . . denied the Maddonnas the opportunity to foster or volunteer with foster children in the organization's care because the family does not share the organization's preferred religious beliefs." *Id.* ¶ 13.

Plaintiff also alleges that she is a federal taxpayer and that she has standing on this basis as well. *Id.* ¶ 14. She claims that her tax dollars are being misspent by HHS because she "object[s] to paying . . . for publicly funded foster-care services" in a manner she deems contrary to law. *Id.* Plaintiff has since conceded that she does not rely on this alleged injury for standing, at least as to the State Defendants. Pl.'s Mem. in Opp'n to State Defs.' MTD at 15 n.5, ECF No. 20 ("Pl.'s Opp'n") ("[T]he State misconstrues [Plaintiff] to be asserting taxpayer standing.").

### IV. Plaintiff's Claims Against the Federal Defendants and the Relief Sought

Plaintiff's Complaint raises five claims against the Federal Defendants. Counts I and II raise APA claims challenging HHS's January 23 decision to grant South Carolina a conditional exception from section 75.300(c)'s religious non-discrimination provision. Specifically, Plaintiff asserts that HHS's decision is arbitrary and capricious, contrary to law, and contrary to constitutional rights. Compl. ¶¶ 116–20.

Counts III through V raise broader constitutional challenges under the Establishment Clause and the Fifth Amendment's equal protection and substantive due process components. *Id.* ¶¶ 121–47. In addition to the January 23 conditional exception decision, Plaintiff relies for these claims on the Federal Defendants' grant of Title IV-E funds to South Carolina, which the State subsequently uses to reimburse Miracle Hill for certain functions under the SC Foster Care Program. *See id.* ¶ 45; *id.* ¶ 60 ("Under Title IV-E of the Social Security Act, South Carolina obtains reimbursement for a portion of the state's foster-care expenditures from [HHS] and uses those federal funds to reimburse licensed child-placement agencies for the services that they provide."). Plaintiff characterizes the Federal Defendants as "enabling" Miracle Hill's allegedly discriminatory conduct by awarding grants to South Carolina and then excepting South Carolina from section 75.300(c)'s religious non-discrimination provision. Compl. ¶¶ 45, 125.

Plaintiff seeks two categories of equitable relief against the Federal Defendants. First, she asks the Court to declare unlawful and set aside the January 23 conditional exception and to enjoin the Federal Defendants from implementing or relying on the exception. *Id.* at 32–33 ¶¶ a, e. Second, she seeks declaratory and injunctive relief concerning the Federal Defendants' award of Title IV-E grants to South Carolina, to prevent them from "expending or providing tax dollars to faith-based foster-care child-placement agencies that use discriminatory religious criteria to perform contracted-for government services." *Id.* at 32–33 ¶¶ c, g.

**ARGUMENT**

Plaintiff's Complaint against the Federal Defendants should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. As to the former ground, the Court lacks jurisdiction to consider any of Plaintiff's claims against the Federal Defendants because she lacks standing to bring them. The jurisdictional defects are double for Counts I and II: those APA-based

claims challenge an action committed to agency discretion by law, and the Court has no jurisdiction on that basis as well. As to the merits, the Complaint fails to state a claim under the Constitution against the Federal Defendants. Counts II through V thus should be dismissed under Rule 12(b)(6) even if the Court has jurisdiction to consider those claims.

## I. Plaintiff Lacks Standing to Sue the Federal Defendants.

As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)—namely, that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). Standing is necessary for Plaintiff to establish the existence of an Article III case or controversy and, thus, to invoke the jurisdiction of the federal courts. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo*, 136 S. Ct. at 1547 (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiff fails to establish standing to sue the Federal Defendants.

### A. Plaintiff Lacks Standing to Sue the Federal Defendants on the Basis of Miracle Hill's Alleged Actions.

Plaintiff alleges standing to sue on the ground that Miracle Hill "denied" her family "the opportunity to foster or volunteer with foster children in the organization's care." Compl. ¶ 13. Plaintiff lacks standing to sue the Federal Defendants for this alleged injury for two interrelated reasons. First, Miracle Hill's denial of the opportunity to volunteer with children in foster care is not fairly traceable to the Federal Defendants. Miracle Hill caused the alleged injury to Plaintiff by applying its own criteria for selecting volunteers and foster parents, not any policy of the

Federal Defendants. Second, Plaintiff has not shown that a favorable decision against the Federal Defendants is likely to redress her asserted injury rather than to lead Miracle Hill to cease providing services under the SC Foster Care Program.

**1.** To establish Article III standing, Plaintiff must demonstrate both that her alleged injury is "fairly traceable to the defendant's allegedly unlawful conduct" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 590 (citation omitted). Where an alleged injury "hinge[s] on the response of [a] regulated (or regulable) third party to the government action" that is not before the court, it is "substantially more difficult to establish" standing. *Id.* at 562 (citation omitted).

Consistent with Supreme Court precedent, the Fourth Circuit has held that "where a third party . . . makes the independent decision that causes an injury, that injury is not fairly traceable to the government" because the third party's decision is an "intervening cause of the injury." *Doe v. Obama*, 631 F.3d 157, 161–62 (4th Cir. 2011). For similar reasons, fatal difficulties arise in attempting to show redressability where a non-party has caused the alleged injury because the court is unable to issue relief compelling the non-party to refrain from taking the action causing the injury or to take other action to redress it. *See Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 236 (4th Cir. 2005). As the Fourth Circuit has explained, "[a]n injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009)).

In line with these principles, the Fourth Circuit has repeatedly denied standing to plaintiffs challenging government policies where the plaintiff's alleged injury was caused by the actions of

a third party. For example, the Fourth Circuit held in *Doe v. Obama* that the decision by private parties to donate their embryos for federally funded stem cell research was not fairly traceable to the federal government, despite the "fact that the government permit[ted]" that conduct by lifting restrictions on federal funding of such research. 631 F.3d at 162. Similarly, in *Frank Krasner*, a third-party venue refused to rent space to the plaintiff for his gun show because of a county law prohibiting any county money from going to locations that hosted gun shows. The court held that the plaintiff's claim against the county failed the traceability and redressability prongs because his injury stemmed from the venue's refusal to rent space to him, not the county law that made it "perhaps prohibitively" more expensive for the venue to rent space to the plaintiff. 401 F.3d at 232–33, 236. The court further held that it could not compel the venue to rent space to the plaintiff because the venue was not a party to the suit. *Id.* at 236.

The Supreme Court also rejected an assertion of standing premised on injuries caused by the actions of third parties not before the Court in *Allen v. Wright*, 468 U.S. 737, 739–40 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). In *Allen*, the Court held that parents of public school children lacked standing to challenge the government's grant of tax-exempt status to racially discriminatory private schools because the plaintiff's asserted injury—segregated public education—was dependent upon the decisions of third parties not before the Court. Among other things, the Court noted that it was speculative "whether withdrawal of [the] tax exemption from any particular school would lead the school to change its policies." *Id.* at 758. The plaintiffs lacked standing even though, like here, they had alleged that the Government's conduct was unconstitutional and, thus, enjoining it would necessarily stop the allegedly unconstitutional action. *See id.* at 745 n.12; *cf.* Pl.'s Opp'n at 15

(arguing that the injury here concerns "discrimination on the basis of religion in the provision of state-authorized, state-funded foster-care services").[3]

**2.** Plaintiff's Complaint suffers the same essential defect found in all of these cases: it was the actions of a third party—here, Miracle Hill Ministries—that caused the injury Plaintiff allegedly suffered. *See* Compl. ¶ 13 ("The Maddonnas suffered harms as alleged in this Complaint *because Miracle Hill Ministries*, an organization that contracts with South Carolina . . ., denied the Maddonnas the opportunity to foster or volunteer . . . .") (emphasis added). Plaintiff cannot establish traceability or redressability for that reason.

Starting with traceability, Plaintiff expressly pleads that it was *Miracle Hill* that caused her alleged injury and that Miracle Hill did so as a result of its own religious beliefs, not any federal criteria or policy. *See* Compl. ¶ 13 (alleging that Maddonna suffered injury "because Miracle Hill" "denied the Maddonnas the opportunity to foster or volunteer with foster children in the organization's care," which Miracle Hill allegedly did "because the [Maddonnas] do[] not share the organization's preferred religious beliefs"); Compl. ¶ 74 (alleging Miracle Hill's criteria for

[3] Plaintiff attempts to argue around these authorities as to traceability by relying on *Sierra Club v. U.S. Department of the Interior*, 899 F.3d 260 (4th Cir. 2018). *See* Pl.'s Opp'n at 12–13. Plaintiff's reliance is misplaced. *Sierra Club* did not involve "independent action of some third party not before the court," *see* 899 F.3d at 284 (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Instead, *Sierra Club* applied the Supreme Court's decision in *Bennett v. Spear* in finding traceability. *Bennett* held that an injury can be traceable to the government's conduct if that conduct had "determinative or coercive effect upon the action" of the person who caused the injury. *See Bennett*, 520 U.S. at 169–70. Thus, in *Sierra Club*, the defendant government agency granted a right of way for a pipeline, the construction of which caused environmental injury to plaintiff. 899 F.3d at 284. That injury could not have occurred without government action. *Id.* (stating that the "pipeline could not have been authorized" without the government's permission). By contrast, Miracle Hill did not take its alleged action because of any coercive or determinative action of the Federal Government but, rather, as a result of its own sincerely held beliefs. *Cf. Doe v. Obama*, 631 F.3d at 162 (decision by private parties to donate their embryos for federally funded stem cell research was not fairly traceable to the federal government, even though "the government permit[ted]" that conduct by lifting restrictions on federal funding of stem cell research).

working with foster parents, which includes "be[ing] in agreement without reservation with the doctrinal statement of Miracle Hill Ministries"). Plaintiff points to no federal policy that requires Miracle Hill to recruit foster parent volunteers only if they share Miracle Hill's beliefs, because no such policy exists. Miracle Hill is thus an "intervening cause" of the injury alleged by Plaintiff, and that injury is not fairly traceable to the Federal Defendants. *Doe v. Obama*, 631 F.3d at 161.

Plaintiff seeks to escape this problem by alleging that the Federal Defendants were "aware of" Miracle Hill's action and "enabled" it by granting South Carolina a conditional exception from section 75.300(c)'s religious non-discrimination provision and by continuing to fund the SC Foster Care Program. *See* Compl. ¶ 45. Those allegations only confirm the lack of causal connection between this suit and the Federal Defendants because they necessarily imply that the direct cause of the injury at issue was not the Government, but the third party that was purportedly "enabled." The Fourth Circuit has rejected a claim of traceability even where the government "permit[ted]" the third-party action that allegedly caused plaintiff's injury by lifting restrictions on federal funding. *Doe v. Obama*, 631 F.3d at 162. That the government's decision to lift funding restrictions may have in some remote sense enabled the third-party actions was not enough to establish that those third-party actions were traceable to the Government. The same rule applies here, particularly where the government did not "permit" Miracle Hill's actions, but merely chose not to disqualify the State from receiving Title IV-E reimbursement for allowable administrative expenses in relation to Miracle Hill's work.

The disconnect between Plaintiff's alleged injury and the Federal Defendants is even more apparent when considering that, in the January 23 conditional exception, HHS took steps to ensure that persons such as Plaintiff would be referred to other foster care service providers. And in keeping with that condition, Plaintiff concedes that multiple foster care agencies operate where

she lives. Compl. ¶ 28. Therefore, Plaintiff cannot allege that even Miracle Hill, let alone the Federal Defendants, entirely denied her the opportunity to volunteer with children in foster care. Plaintiff's alleged injury is thus all the more properly attributable to Miracle Hill, not to the Federal Defendants, because that alleged injury solely concerns Plaintiff's ability to volunteer with Miracle Hill, not her ability to volunteer with children in the SC Foster Care Program.

Plaintiff's Complaint similarly fails to establish that her asserted injury is redressable by the relief requested against the Federal Defendants. Miracle Hill is not a party to this litigation, and the Court accordingly cannot compel it to work with Plaintiff. The inability to work with Miracle Hill is the core injury Plaintiff alleges, and this Court cannot require the opposite. That alone is largely dispositive of the attempt to invoke the Court's jurisdiction. *See Frank Krasner*, 401 F.3d at 236 (holding that plaintiff had not established redressability against county government that passed law making it "perhaps prohibitively" expensive for a third-party venue to rent space to plaintiff because the court could not "compel" the third-party venue to act).

Even as to the relief that might be directed against the Federal Defendants, this relief would do nothing more than raise a speculative chance of remedying Plaintiff's alleged injury. Compl. ¶ 13. Plaintiff seeks an injunction against implementation of HHS's January 23 conditional exception for South Carolina, as well as an injunction against federal funding of faith-based child placing agencies that apply religious criteria in carrying out foster care activities. But HHS cannot force Miracle Hill to continue accepting funds from South Carolina or continue working within the state's foster care system. Indeed, Plaintiff repeatedly alleges that Miracle Hill's actions were the result of deeply held religious convictions, *e.g.*, Compl. ¶¶ 38–40. It is thus speculative at best that an injunction against the January 23 conditional exception, or against continued federal funding of the SC Foster Care Program altogether, would actually lead Miracle Hill to reverse its

position and provide Plaintiff the opportunity to volunteer with foster children. *See, e.g.*, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43–44 (1976) (plaintiff lacked standing because even if the government withheld favorable tax treatment from third-party hospitals that were causing the plaintiff's alleged injury, it was "just as plausible" that the hospitals "would elect to forgo" that tax treatment rather than change their behavior). It is also speculative whether any equitable relief against the Federal Defendants would cause South Carolina to cease licensing Miracle Hill as a child-placing agency in any event, a decision over which Federal Defendants have no control. *Cf. Mirant Potomac River*, 577 F.3d at 230 (petitioner failed to show traceability to sue federal agency because the alleged injury arose from a state regulatory regime separate from federal regulations and "each [regulatory scheme] received final approval from different sovereigns through different processes").

In sum, the Federal Defendants were not the cause of Plaintiff's alleged injury, and issuing the equitable relief requested against them would not likely redress Plaintiff's alleged injury. Plaintiff lacks standing against the Federal Defendants.

**B. Whether She is Asserting It or Not, Plaintiff Lacks Taxpayer Standing.**

Plaintiff also alleges that she has been injured in her capacity as a federal taxpayer because of her objections to the manner in which the Federal Government is spending her tax dollars. Compl. ¶ 14. Nonetheless, Plaintiff appears to concede in her brief opposing the State Defendants' motions to dismiss that she does not rely on taxpayer standing in this lawsuit, at least as to the State Defendants. Pl.'s Opp'n at 15 n.5 ("[T]he State misconstrues [Plaintiff] to be asserting taxpayer standing."). Even if Plaintiff intends to assert taxpayer standing against the Federal Defendants, however, her attempt would fail; decades of Supreme Court precedent show that Plaintiff cannot invoke this Court's jurisdiction on the basis of her taxpayer status.

The long-established general rule is that status as a federal taxpayer does not confer Article III standing to challenge actions by the Federal Government. *See Frothingham v. Mellon, decided with Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Except for one narrow circumstance discussed below, a plaintiff may not use his or her status as a federal taxpayer to raise a "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *See Lujan*, 504 U.S. at 573–74. Under this unbroken line of authority, Plaintiff cannot invoke taxpayer standing to support her APA, equal protection, or due process claims (Counts I, II, IV, and V).

The same is true for Plaintiff's Establishment Clause claim (Count III). In just two cases—*Flast v. Cohen*, 392 U.S. 83 (1968), and *Bowen v. Kendrick*, 487 U.S. 589 (1988)—the Supreme Court has recognized a "narrow exception . . . to the general rule against taxpayer standing" for certain Establishment Clause claims. *Kendrick*, 487 U.S. at 618. This exception allows taxpayers to challenge an expenditure that allegedly violates the Establishment Clause where the expenditure is "funded by a specific congressional appropriation . . . disbursed . . . pursuant to a direct and unambiguous congressional mandate" under the Taxing and Spending Clause. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 604 (2007).[4] This exception has rarely been satisfied. *See Ansley v. Warren*, 861 F.3d 512, 519 (4th Cir. 2017) (recognizing that the Supreme Court's "application of the doctrine has been narrowly circumscribed").

---

[4] Throughout this brief, the Government cites Justice Alito's opinion in *Hein* announcing the Judgment of the Court; where "no single rationale explaining the result enjoys the assent of five Justices," as in *Hein*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *See Marks v. United States*, 430 U.S. 188, 193 (1977) (citation omitted). The Fourth Circuit accordingly appears to treat the *Hein* plurality opinion as authoritative. *See Ansley*, 861 F.3d 512 (repeatedly citing the *Hein* plurality opinion as representing the holding of the Supreme Court).

Indeed, the Supreme Court has made clear that the *Flast* exception applies only where the relevant statute expressly requires or contemplates expenditures to religious organizations or activities. In *Hein v. Freedom From Religion Foundation*, a group of taxpayers sought to challenge the use of "Congressional taxpayer appropriations" to pay for conferences at which the President promoted federal grant-making to faith-based organizations. 551 U.S. at 596. The Court denied taxpayer standing because the relevant appropriations act did not "*specifically authorize* the use of federal funds to pay for the conferences or speeches that the plaintiffs challenged." *Hein*, 551 U.S. at 593 (emphasis added). There was no statute in *Hein* that "expressly contemplated that [federal funds] might go to projects involving religious groups." *Id.* at 607. "[T]he expenditures that respondents challenge[d] were not expressly authorized or mandated by any specific congressional enactment," and thus, "respondents' lawsuit [was] not directed at an exercise of congressional power." *Id.* at 608. Accordingly, absent a statute that expressly contemplates the specific objectionable expenditures at issue, the *Flast* exception does not apply.

Thus, even if Plaintiff is asserting taxpayer standing against the Federal Defendants, her assertion of taxpayer standing fails because she has not identified any act of Congress that appropriates funds specifically for faith-based organizations under the Title IV-E program. Nor is there any act of Congress that expressly contemplates, let alone requires, the involvement of faith-based organizations in the program. As explained above, Title IV-E only contemplates the issuance of federal grants to *state governments*. The statute says nothing about whether states will, or should, use those funds to pay faith-based organizations. Congress did not "*specifically authorize* the use of federal funds" for grants to faith-based organizations under Title IV-E, and

that fact is dispositive of any taxpayer standing claim here. *See Hein*, 551 U.S. at 593 (emphasis added).[5]

## II. The Court Lacks Jurisdiction to Consider Plaintiff's APA Claims Because HHS's Enforcement Decision is Committed to Agency Discretion By Law.

The APA precludes review of agency actions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and district courts accordingly lack jurisdiction to consider APA claims concerning such actions. *Angelex Ltd. v. United States*, 723 F.3d 500, 502 (4th Cir. 2013). The January 23 conditional exception reflects HHS's decision not to enforce a portion of its regulation in certain circumstances. That is a matter committed to HHS's discretion by law and thus precluded from review under section 701(a)(2). Accordingly, Counts I and II should be dismissed for lack of subject matter jurisdiction.

In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court held that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is . . . generally committed to an agency's absolute discretion" and is therefore "presumed immune from judicial review under § 701(a)(2)." *Id.* at 831–32. As the *Chaney* Court explained, an agency's decision whether or not to enforce is similar in significant ways to a prosecutor's decision whether or not to indict—"a decision which has long been regarded as the special province of the Executive Branch." *Id.* at 832; *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[T]he decision whether or not to prosecute . . . generally rests entirely in [the prosecutor's] discretion.").

---

[5] Plaintiff concedes in her opposition brief to the State Defendants' motions to dismiss that she does not rely on injuries to third parties for standing. Pl.'s Opp'n at 10 n.1 ("Mrs. Maddonna does not seek to represent, or premise her standing on, the injuries" alleged as to various third parties). Nor could she, as her Complaint does not allege the elements necessary to assert third-party rights. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205 (4th Cir. 2002) (holding that a plaintiff seeking to overcome the general rule against asserting third-party legal rights must show a close relationship between herself and the person whose right she seeks to assert, as well as a hindrance to the third party's ability to protect his or her own interests).

An agency's decision not to enforce a regulation involves "a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise." *Chaney*, 470 U.S. at 831. These factors include assessing whether any violation has occurred at all, "whether agency resources are best spent" on any particular enforcement action, and whether such action "best fits the agency's overall policies." *Id.* "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831–32.

The Fourth Circuit has similarly explained that the "judiciary is ill-equipped to oversee executive enforcement decisions, whereas the agency is equipped to decide where to focus scarce resources, how to handle delicate federal-state relations and how to evaluate the strengths and weaknesses of particular cases." *Sierra Club v. Larson*, 882 F.2d 128, 133 (4th Cir. 1989); *see also id.* (reasoning that the "separation of powers" underpins the "presumption of the unreviewability of administrative agency decisions not to pursue enforcement in particular instances"). The presumption against review of agency non-enforcement decisions applies even where an agency "gives a 'reviewable' reason for otherwise unreviewable action," such as construing a statute in deciding that an enforcement action would not be supportable. *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987) ("*BLE*").

The January 23 conditional exception from HHS is the type of non-enforcement decision that is "presumed immune" from judicial review under the APA. *See Chaney*, 470 U.S. at 831–32. Plaintiff's APA claims necessarily take issue with a non-enforcement decision—specifically, HHS's conditional decision not to enforce 45 C.F.R. § 75.300(c)'s religious non-discrimination provision against South Carolina as to Miracle Hill and similarly situated faith-based subgrantees of the State. HHS reached that decision based on a balance of factors, including the agency's judgment about the restrictions imposed by RFRA on the agency's enforcement discretion and the

"significant programmatic burden" that would attend enforcement of the regulation. *See* Ex. A at 3–4. Moreover, the agency's decision was conditional on South Carolina requiring Miracle Hill and other subgrantees invoking the exception to refer potential foster parents to other subgrantees in the SC Foster Care Program or to the State itself, further demonstrating the discretionary balancing of policy priorities that attended HHS's non-enforcement decision. *See id.*

Under Fourth Circuit case law, these characteristics render the January 23 conditional exception non-reviewable under the APA. For example, in *Larson*, the Fourth Circuit considered the Federal Highway Administration's alleged failure to enforce the Highway Beautification Act's ("HBA's") provisions regarding outdoor advertising against South Carolina. 882 F.2d at 129. The HBA required states participating in the Federal Highway Administration's highway beautification program to maintain "effective control" over outdoor advertising and permitted the Secretary of Transportation to institute enforcement proceedings for failure to maintain such control, including by withholding a portion of federal highway funds. *Id.* Although an agency investigation indicated that South Carolina was not maintaining "effective control" over its outdoor advertising, the agency "declined to take any further corrective action." *Id.* at 130. The Fourth Circuit held that this decision was an unreviewable exercise of discretion, concluding that the statute's definition of "effective control" "forewarn[ed] states of their obligations under the law," but did not state "a requirement that the Secretary follow these guidelines when deciding whether to bring an enforcement action." *Id.* at 132. Put differently, the requirement to maintain effective control did not provide "standards which govern the threshold decision of whether to formally enforce the statute by withholding funds from a particular state." *Id.* Accordingly, the court held there was "no law to apply" in cabining the Secretary's enforcement discretion and thus "appellant ha[d] failed to overcome the presumption of unreviewability." *Id.*

*Larson* is on all fours here. Just like in *Larson*, "South Carolina already receives federal . . . funds," and HHS's decision to grant an exception "was a non-coercive one declining to proceed toward further action to withhold a portion of these funds," a decision that "judicial review" was not "intended" to address. *Id.* Plaintiff has not alleged that any statute obligates HHS to take enforcement action for the violation of its grant regulations, nor could she. To the contrary, an HHS regulation, 45 C.F.R. § 75.102(b), expressly gives HHS discretion to issue exceptions from its grant regulations, including section 75.300(c). Section 75.102(b) sets forth no meaningful standard for deciding whether an exception should be granted, but merely provides that HHS "may" grant exceptions except where otherwise required by law, further demonstrating the lack of constraints on the agency's enforcement discretion here. *See Chaney*, 470 U.S. at 830 (section 701(a)(2) of the APA applies where there is "no meaningful standard against which to judge the agency's exercise of discretion"). In sum, HHS had unreviewable discretion under the APA to weigh whether enforcement of its regulation was appropriate here. Because Plaintiff has failed to overcome the presumption of non-reviewability under section 701(a)(2), this Court lacks jurisdiction to review Counts I and II.

Plaintiff may argue that the January 23 conditional exception is nonetheless reviewable because it is partially based on HHS's interpretation of RFRA's application here. But in *BLE*, the Supreme Court expressly rejected the proposition that "if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." 482 U.S. at 283. By way of example, the Court observed that "a common reason for failure to prosecute an alleged criminal violation is the prosecutor's belief (sometimes publicly stated) that the law will not sustain a conviction." *Id.* Nonetheless, "it is entirely clear that the refusal to prosecute cannot be the subject of judicial review," notwithstanding the fact that the prosecutor's belief "is surely an eminently

'reviewable' proposition." *Id.* And of course, HHS gave other reasons for its decision as well—including that not granting the exception "would . . . cause a significant programmatic burden . . . by impeding the placement of children into foster care." Ex. A at 3.

## III. Plaintiff Fails to State Constitutional Claims.

Plaintiff raises Establishment Clause, equal protection, and substantive due process claims against the Federal Defendants in Counts III, IV, and V. The Complaint appears to support these claims with three sets of allegations: 1) the alleged actions of Miracle Hill and Federal Defendants' purported failure to prevent them; 2) the State of South Carolina's expenditure of federal grant funds on faith-based sub-grantees, including Miracle Hill; and 3) the Federal Defendants' issuance of the January 23 conditional exception. None of these allegations is an adequate basis for Plaintiff's constitutional claims against the Federal Defendants. Plaintiff has not adequately alleged that the Federal Defendants may be held legally responsible for Miracle Hill's actions or South Carolina's licensing and funding decisions. And the January 23 conditional exception does not violate the Constitution under any of the relevant standards. Counts III, IV, and V should, therefore, be dismissed for failure to state a claim. The APA claim in Count II, which is founded on the same constitutional theories, should be dismissed as well.

### A. Plaintiff Fails to State a Claim Against the Federal Government Based on Miracle Hill's Actions.

To hold the government legally responsible for the action of a private party, a plaintiff must show that "there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the [challenged] action of the [private party] may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citation omitted). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* The

government's "[m]ere approval of or acquiescence in the initiatives of a private party" is not sufficient to meet this standard. *Id.* at 1004–05. Instead, to attribute a third party's actions to the government, those actions must have been the product of "coercive power" by the government or of "significant encouragement, either overt or covert," by the government. *Id.* The government will thus not be held responsible for others' acts, even where those acts were allegedly authorized by the government, if the acts were the result of "judgments made by private parties without standards established by the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 43–44, 52–53 (1999) (quoting *Blum*, 457 U.S. at 1008) (alterations omitted); *see also id.* (no state action in private parties' decisions to withhold payment for disputed medical treatments, even though Pennsylvania's workers' compensation laws authorized such withholding pending an independent review process to determine a treatment's reasonableness).

The Complaint falls far short of establishing state action for which the Federal Defendants can be held responsible. Plaintiff's claims rest on the alleged decision of a private party, Miracle Hill, to deny her the opportunity to volunteer through that organization with children in foster care. The Complaint does not allege that the Federal Defendants compelled or significantly encouraged Miracle Hill's decision. Rather, the Complaint alleges that Miracle Hill's decision not to work with Plaintiff was the result of Miracle Hill's own religious beliefs. *See* Compl. ¶ 13. That is not a sufficient basis to hold the Government liable. *See Am. Mfrs. Ins. Co.*, 526 U.S. at 52.

Indeed, the Fourth Circuit has previously affirmed dismissal of foster-care-related claims against government defendants on state action grounds for reasons that are dispositive here. *See Milburn v. Anne Arundel Cty. Dep't of Social Servs.*, 871 F.2d 474 (4th Cir. 1989). *Milburn* involved claims under 42 U.S.C. § 1983 based on state government defendants' decision to place the plaintiff with foster parents that physically abused him. *Id.* at 475–76. The court concluded

that the State could not be held responsible for the foster parents' actions because it "did not order or cause the action complained of," nor did the state "encourage" those actions. *Id.* at 479. Similarly, the Federal Defendants here did not order, cause, or encourage Miracle Hill's alleged decision not to work with Plaintiff. *Milburn* accordingly shows that Plaintiff cannot seek relief against the Federal Defendants on the basis of that decision.

Plaintiff attempts to escape the straightforward lack of state action here by alleging that the Federal Defendants were aware of Miracle Hill's religious beliefs and failed to impose adequate safeguards to prevent or respond to Miracle Hill's allegedly discriminatory actions, *see* Compl. ¶ 45, but that is insufficient to state a claim. The Supreme Court and Fourth Circuit have long rejected claims of state responsibility for private conduct where the government had notice of that conduct and did not act to prohibit it. For example, in *Blum*, the Court held that a private nursing home's allegedly improper discharge or transfer of patients did not become state action even when the state was notified of the nursing home's conduct and adjusted the patients' Medicaid benefits accordingly. *Blum*, 457 U.S. at 1004–05. The premise of the plaintiff's foster-care-related claims in *Milburn*, which the Fourth Circuit rejected for lack of state action, was similarly that the state had failed to exercise adequate care in preventing harms to him at the hands of his foster parents. 871 F.2d at 475–76 (summarizing plaintiff's claim that the state "displayed gross negligence and deliberate indifference" through his continued placement in the foster home). Plaintiff's allegations here amount to no more than "[m]ere approval of or acquiescence in" a course of conduct. That is insufficient to establish governmental liability. *Blum*, 457 U.S. at 1004–05.

That Miracle Hill receives public funds to carry out services under the SC Foster Care Program also does not render the Federal Defendants liable for Miracle Hill's conduct. The Supreme Court has rejected an attempt to characterize a nonprofit private school as a state actor,

even when "nearly all of the students at the school [had] been referred to it" by various governmental entities and "[i]n recent years, public funds [had] accounted for at least 90% and in one year 99%, of respondent school's operating budget." *Rendell-Baker v. Kohn*, 457 U.S. 830, 832 (1982). The Court explained that the school was not "fundamentally different from many private corporations whose business depends primarily" on government contracts. "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Id.* at 840–41.

Moreover, the fact that Miracle Hill was administering public services on behalf of children in the State foster care system does nothing to change the high burden Plaintiff must meet to show coercion or significant encouragement by the Federal Government. "That a private entity performs a function which serves the public does not make its acts state action." *Id.* at 842. An entity performing functions that serve the public becomes a state actor on that basis only when carrying out powers that are "traditionally exclusively reserved to the State" as attributes of sovereignty, "such as eminent domain" or the administration of elections. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1974) (citing cases). Under Fourth Circuit case law, the care of foster children does not meet this restrictive standard. *Milburn*, 871 F.2d at 479 ("The care of foster children is not traditionally the exclusive prerogative of the State.").

In sum, Plaintiff has failed to show that the Federal Defendants may be held legally responsible for Miracle Hill's alleged actions. Thus, her claims against the Federal Defendants arising from the decisions made by Miracle Hill should be dismissed under Rule 12(b)(6).

**B. Plaintiff Fails to State a Claim Against the Federal Government Based on South Carolina's Licensing and Funding Decisions.**

Plaintiff also takes issue with the alleged expenditure of federal funds on faith-based subgrantees, specifically Miracle Hill. But that allegation also fails to state a claim against the

Federal Defendants for similar reasons to the Miracle Hill-related allegations, namely that Plaintiff has not alleged action for which the Federal Defendants can be held legally responsible.

The Federal Defendants themselves do not expend federal funds on the activities of Miracle Hill or on the activities of any other non-state entity, faith-based or not, under the SC Foster Care Program. Instead, it is *South Carolina* that licenses child-placing agencies for participation in the state's foster care system, Compl. ¶ 20, and it is *South Carolina* that contracts with and distributes money to these entities as reimbursement for applicable expenses, Compl. ¶ 60. Plaintiff's own Complaint recognizes that "[u]nder Title IV-E of the Social Security Act, *South Carolina* obtains reimbursement for a portion of the state's foster-care expenditures" from HHS and the State "uses those federal funds to reimburse licensed child-placement agencies for the services that they provide" under the State's system. *Id.* (emphasis added). Plaintiff is correct—HHS has no direct grant or contractual relationship with Miracle Hill or any other sub-grantee of South Carolina for purposes of the Title IV-E program.

Just as Plaintiff failed to allege that the Federal Defendants are responsible for Miracle Hill's actions, she has failed to show that the Federal Defendants may be held responsible for South Carolina's decision to license or issue funding to Miracle Hill (or any other child-placing agency). Plaintiff has not alleged that the State's decisions regarding licensure or funding were the product of any coercion or encouragement by the Federal Defendants. *Blum*, 457 U.S. at 1004–05. And the Federal Defendants' mere acquiescence in those decisions through their continued funding of grants to South Carolina cannot support a finding of federal action. *See id.* The Federal Defendants thus are not the proper party against whom to test this claim.[6]

---

[6] As for HHS's award of grants *to South Carolina* under the Title IV-E program, there is no plausible basis to say that that action, standing alone, raises any concern under the Establishment

**C. Plaintiff Fails to State a Claim Based on the January 23 Conditional Exception.**

Plaintiff's attempt to state constitutional claims based on the January 23 conditional exception also fails to meet the standards applicable to each of the constitutional provisions she invokes. Counts III, IV, and V should be dismissed accordingly. For the same reasons, Plaintiff's APA challenge to the constitutionality of HHS's exception decision in Count II should be dismissed for failure to state a claim.

**1.** The January 23 conditional exception does not violate the Establishment Clause. According to the well-worn test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Establishment Clause requires that "government conduct (1) must be driven in part by a *secular purpose*; (2) must have a *primary effect* that neither advances nor inhibits religion; and (3) must not *excessively entangle* church and State." *Wood v. Arnold*, 915 F.3d 308, 314 (4th Cir. 2019) (quoting *Moss v. Spartanburg Cty. Sch. Dist. 7*, 683 F.3d 599, 608 (4th Cir. 2012)); *see also Lambeth v. Bd. of Comm'rs of Davidson Cty., NC*, 407 F.3d 266, 268–69 (4th Cir. 2005) (applying *Lemon* test in affirming the dismissal of an Establishment Clause claim under Rule 12(b)(6)). The January 23 conditional exception easily meets each of these requirements.

First, the January 23 conditional exception was driven by a secular purpose. The purpose prong of the *Lemon* test "imposes a fairly low hurdle" and simply requires the government to "show that it had a plausible secular purpose for its action" that was not "pretextual." *Wood*, 915 F.3d at 315. The government's purpose need not even have been "exclusively secular," so long as "advancing religion" was not the "*predominant purpose*" of the action. *Id.*; *see also McCreary Cty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 864 (2005) (secular purpose cannot be "merely secondary

---

Clause or the Fifth Amendment. Nor does Plaintiff appear to assert otherwise (she does not challenge Title IV-E itself, for example).

to a religious objective" and "not a sham").

The January 23 HHS letter to Governor McMaster explains at least two secular purposes supporting HHS's conditional exception: first, to comply with the requirements of RFRA; and second, to ensure the continued availability of entities to serve the welfare of children in the SC Foster Care Program. Ex. A at 3–4. These are legitimate and plausible secular purposes and Plaintiff has not alleged any basis to say they were pretextual. *See Lambeth*, 407 F.3d at 270 n.2 (affirming dismissal where complaint did not allege that concededly secular purpose was pretextual). Moreover, Plaintiff has not made any non-conclusory allegation that the Federal Defendants had any purpose of advancing religion at all, let alone that such a purpose was "predominant." Plaintiff's conclusory allegation that Federal Defendants had a "primary purpose" to advance religion is not sufficient under federal pleading standards to survive dismissal. *See Ashcroft*, 556 U.S. at 680–81 (allegation that government officials subjected plaintiff to harsh conditions "solely on account of [his] religion, race, and/or national origin" was "conclusory" and, thus, "not entitled to be assumed true"). Plaintiff's threadbare assertion of the *Lemon* test's first element will not suffice.

Second, the January 23 conditional exception's primary effect neither advances nor inhibits religion. The second *Lemon* prong asks whether "the principal effect of government action is to suggest" to a "reasonable, informed observer" a "government preference for a particular religious view or for religion in general." *Wood*, 915 F.3d at 316 (citation omitted). The January 23 conditional exception does not suggest to a reasonable observer a government preference for particular religious views, especially when viewed in the full context provided by the January 23 letter communicating HHS's exception decision. *See id.* at 317 (challenged government conduct must be viewed in its full context) (citing *Lambeth*, 407 F.3d at 271).

As an initial matter, HHS's recognition that faith-based entities may participate as providers in the SC Foster Care Program does not advance religion; the Establishment Clause permits religious organizations to participate as providers of secular services under government programs. *Kendrick*, 487 U.S. at 609. HHS's January 23 letter recognizes both the strict statutory requirement of religious accommodation imposed by RFRA and the programmatic burden on South Carolina's foster care system that would come with losing a large provider like Miracle Hill. With those premises considered, the letter grants an exception from the religious non-discrimination provision of section 75.300(c) while imposing a condition that Miracle Hill and other faith-based entities using the exception refer prospective foster parents to other agencies when they are unable to work with them.

This context would indicate to a reasonable, informed observer that HHS's conditional exception did not express a preference for any particular religious view or for religion in general. Instead, the agency worked to ensure that no prospective foster parent will be prevented from serving children in the SC Foster Care Program on the basis of any person's or entity's religious beliefs, while also reasonably accommodating Miracle Hill's own religious beliefs. Viewed in full, that action neither advances nor inhibits religion; it is fundamentally neutral toward the religious views of Plaintiff, Miracle Hill, and anyone else. Indeed, accommodations of religious practice are a permissible, and often required, form of government action. *See, e.g.*, *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 (1987) ("[The Supreme Court] has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.") (citation omitted).

Third, the January 23 conditional exception does not create an excessive entanglement

between church and state. The final prong of the *Lemon* test prohibits "'comprehensive, discriminating, and continuing state surveillance' of religious exercise." *Lambeth*, 407 F.3d at 273 (quoting *Lemon*, 403 U.S. at 619). A showing of such "comprehensive surveillance" is "necessary" to show a violation of this aspect of *Lemon*. *Id.* (quoting *Mueller v. Allen*, 463 U.S. 388, 403 (1983)). The January 23 conditional exception does not require any kind of "pervasive monitoring" or comprehensive surveillance of religious exercise. *See id.* To the contrary, the conditional exception works to avoid state entanglement with religious practice by accommodating Miracle Hill's religious views, so long as the State ensures compliance with the religiously neutral condition of making referrals when Miracle Hill is unable to work with a prospective foster parent.

**2.** Plaintiff also cannot state an equal protection claim on the basis of the January 23 conditional exception. An equal protection claim must be tied to a personal denial of equal treatment and there is no plausible basis to allege that the January 23 conditional exception personally denied Plaintiff equal treatment. The Supreme Court has held that "stigma" and "value interests" alone are not judicially cognizable injuries when they are not tied to a personal denial of equal protection. *See Allen*, 468 U.S. at 755–56 ("Our cases make clear, however, that [stigmatic] injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.") (citation omitted). Plaintiff has alleged no direct interaction between herself and the Federal Defendants, and the January 23 conditional exception, which HHS issued to Governor McMaster, certainly is not one. Thus, Plaintiff's equal protection claim related to the January 23 conditional exception must be tied to the alleged actions of Miracle Hill, and Plaintiff cannot state a claim on that basis for the reasons described above.

**3.** Plaintiff's substantive due process challenge to the January 23 conditional exception also fails at the outset because Executive action violates substantive due process only

where such action is "fatally arbitrary," a high bar Plaintiff cannot clear. *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The question of fatal arbitrariness is addressed at the threshold, with courts considering "whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Lewis*, 523 U.S. at 847 n.8); *see also Slaughter v. Mayor & City Council of Balt.*, 682 F.3d 317, 321 (4th Cir. 2012) (stating that this standard "encompasses only the most egregious official conduct"). Conduct that meets this test "must be 'intended to injure in some way unjustifiable by any government interest.'" *Hawkins*, 195 F.3d at 742 (emphasis and citation omitted). "If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest." *Id.* at 738.

The January 23 conditional exception was not fatally arbitrary because it was not "intended to injure" at all, let alone in a manner "unjustifiable by any government interest," and it was also not "so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience." *See id.* at 738, 742. The Complaint contains no plausible allegation of invidious intent by the Federal Defendants (nor could it), and in any event, the face of the January 23 conditional exception demonstrates reasonableness, not outrageousness. *See* Ex. A. The conditional exception protects the rights of entities like Miracle Hill to engage in the free exercise of religion, as required by RFRA, while also taking steps to ensure that individuals who do not meet Miracle Hill's religious criteria will be referred to other providers. The exception also avoids the negative programmatic consequences of a major provider of services in the SC Foster Care Program ending its participation in that program. This is not the stuff of which fatally arbitrary government action is made. *Compare Rochin v. California*, 342 U.S. 165, 172 (1952) (forcible pumping of a suspect's stomach "shocked the conscience" as a method "too close to the rack and the screw"); *with*

*Hawkins*, 195 F.3d at 746 (Parole Commission's decision to revoke parole and re-incarcerate individual was not marked by "any element of vindictiveness or of power exercised simply to oppress;" instead, "[t]here were legitimate governmental interests and objectives a–plenty to justify the act").

Even if Plaintiff could hurdle this initial "shocks the conscience" test, her due process claim would still fail because the appropriate standard for evaluating the January 23 conditional exception on due process review is the rational basis test, which HHS's action readily passes. In the absence of infringement of a fundamental liberty interest, government action need only be "rationally based to survive" due process review. *Hawkins*, 195 F.3d at 748. And rational basis review is a "paradigm of judicial restraint . . . which prohibits [the Court] from sitting as a super-legislature to judge the wisdom or desirability of legislative policy determinations." *Freilich*, 313 F.3d at 211 (citation and alterations omitted) (stating that rational basis review accords a "strong presumption of validity" to government action). As more fully set forth above, the January 23 conditional exception is rationally related to at least two legitimate government interests: complying with the law, i.e. RFRA, and ensuring the availability of providers to serve children in the SC Foster Care Program. Ex. A at 3–4. Rational basis review requires no more.

Plaintiff nonetheless argues that a heightened standard of review should apply, pointing to her First Amendment rights as a fundamental liberty interest. Pl.'s Opp'n at 31–32. Substantive due process analysis is inappropriate, however, for the analysis of First Amendment-based claims: "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Thus, Plaintiff's First Amendment Establishment Clause claim must rise or fall

on the standards applicable to that constitutional provision.[7]

**CONCLUSION**

For the foregoing reasons, Federal Defendants respectfully request that the Court dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: April 26, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SHERRI A. LYDON
United States Attorney

*By:* *s/ Christie V. Newman*
CHRISTIE V. NEWMAN (#5473)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone: (803) 929-3021
Email: Christie.Newman@usdoj.gov

MICHELLE BENNETT
Assistant Branch Director

CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General

[7] There is also no fundamental liberty interest in being considered to serve as a foster parent. *Cf. Ross v. Cecil Cty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 619 (D. Md. 2012) ("In the Fourth Circuit it is settled that a foster parent does not have a liberty interest protected by the Due Process Clause in a continued relationship with a foster child because a liberty interest attaches only to a custodial relationship.") (citation and alterations omitted).

JAMES R. POWERS (TX Bar No. 24092989)*
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW, Room 11218
Washington, DC 20005
Telephone: (202) 353-0543
Email: james.r.powers@usdoj.gov

**Pro hac vice* application forthcoming

*Counsel for Federal Defendants*